**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

BRENDA ENTERLINE,

    Plaintiff,

          v.

POCONO MEDICAL CENTER,

    Defendant.

CIVIL ACTION No. 3:08-cv-1934

(JUDGE CAPUTO)

## MEMORANDUM

Now before the Court is the Plaintiff's Motion to Compel and for Sanctions (Doc. 9). For the reasons detailed below, the Court will deny this motion.

The Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1331.

## BACKGROUND

On September 25, 2008, Plaintiff Brenda Enterline filed a Complaint against the Pocono Medical Center ("Hospital") alleging that she was subjected to a hostile work environment through an ongoing pattern of sexual harassment and that the Hospital retaliated against her after she complained about this harassment. (Compl., Doc. 1.) On October 9, 2008, *The Pocono Record* ("Newspaper" or "Respondent") published an article about Plaintiff's lawsuit in its print edition and on its website. (Ex. A, Doc. 15.) In response to the article, several people anonymously posted comments on the Newspaper's website with some of the posters claiming to have personal knowledge of the parties or facts at issue in Plaintiff's suit. (Ex. B, Doc. 15.) On October 20, 2008, the Plaintiff served *The Pocono Record* a subpoena demanding production of documents pertaining to the identity of individuals who had made these anonymous posts. (Subpoena, Ex. A, Doc. 9.) On

November 3, 2008, counsel for *The Pocono Record* contacted Plaintiff's counsel and requested additional time in which to respond to the subpoena. (Pl.'s Br. in Supp., Doc. 10 at 1-2; Resp. Br. in Opp., Doc. 13 at 2.) Plaintiff's counsel agreed to grant an extension if the Respondent needed more time to compile responsive documents. (Pl.'s Br. in Supp., Doc. 10 at 2; Resp. Br. in Opp., Doc. 13 at 2.) On November 6, counsel for the Newspaper served objections to the subpoena pursuant to Federal Rule of Civil Procedure 45 in a letter sent to Plaintiff's counsel. (Ex. B, Doc. 9.) Specifically, the Respondent objected to the subpoena because (1) the information sought by the subpoena is protected by the First Amendment, (2) the subpoena seeks production of documents that are protected by the reporter's privilege, (3) the subpoena fails to comply with Federal Rule of Civil Procedure 45, and (4) the subpoena is untimely pursuant to Federal Rule of Civil Procedure 26. (*Id.*)

Plaintiff filed the present motion on November 10, 2008 (Doc. 9) along with a corresponding brief in support (Doc. 10). On November 26, 2008, counsel for Respondent filed their brief in opposition to Plaintiff's motion to compel. (Doc. 13). Accordingly, the Plaintiff's motion has been fully briefed and is currently ripe for disposition.

## DISCUSSION

Plaintiff's brief in support responds to Respondent's articulated objections to the subpoena and identifies five arguments in favor of the Plaintiff's motion to compel. First, Plaintiff argues that *The Pocono Record* lacks standing to assert First Amendment Rights on behalf of the third-party anonymous commentators. Second, Plaintiff argues that the disclosure of the anonymous commentators' identities is proper in light of tests established and used by other district courts. Third, Plaintiff argues that the reporter's privilege does

not apply in this case because the commentators were each acting as an individual journalist, not as a source. Fourth, Plaintiff argues that the subpoena is not unduly burdensome. And finally, Plaintiff argues that the subpoena was timely with respect to Federal Rule of Civil Procedure 26 because the rules governing the timing of discovery in federal civil matters do not apply to third-party subpoenas.

**I.    Does *The Pocono Record* Have Standing to Assert First Amendment Rights On Behalf of Third-Party Commentators?**

Plaintiff argues that *The Pocono Record* lacks standing to assert First Amendment Rights on behalf of the third-party anonymous commentators. In particular, the Plaintiff argues that the "Respondent merely operates a website that allows anyone to post comments anonymously. The First Amendment rights of Respondent are not at issue, and Respondent has no basis to assert objections on behalf of individuals not present." (Pl.'s Br. in Supp., Doc. 10 at 2.)

"[T]he question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). The requirements for federal court standing derive from interpretations of the United States Constitution and from the need for prudent judicial administration. The United States Supreme Court has identified three constitutional standing requirements.

> This "irreducible constitutional minimum" of standing requires: (1) that the plaintiff have suffered an "injury in fact"–an invasion of a judicially cognizable interest which is (a) concrete and particularize and (b) actual or imminent, not conjectural or hypothetical; (2) that there be a causal connection between the injury and the conduct complained of–the injury must be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court; and (3) that it be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Bennett v. Spear*, 520 U.S. 154, 167 (1997) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

In addition to the constitutional standing requirements, the Supreme Court has established three prudential standing requirements. First, the Supreme Court has held that prudent judicial administration prevents standing "when the asserted harm is a generalized grievance shared in a substantially equal measure by all or a large class of citizens." *Warth*, 422 U.S. at 499. The second prudential standing requirement is commonly referred to as the "zone of interests" requirement and dictates that "the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Association of Data Processing Service Organizations, Inc. v. Camp*, 397 U.S. 150, 153 (1970). No questions concerning the so-called "generalized grievance" and "zone of interests" prudential standing requirements arise from the facts of the case currently before the Court.

The third prudential standing requirement, the rule against third-party standing, is, however, at issue in the current case. Generally,

> even when [a] plaintiff has alleged injury sufficient to meet the "case or controversy" requirement, the [Supreme] Court has held that the plaintiff. . . must assert his own legal rights and interests and cannot rest his claim to relief on the legal rights or interests of third parties.

*Warth*, 422 U.S. at 499. The Supreme Court has, however, articulated exceptions to this general prohibition against third-party standing. "Where practical obstacles prevent a party from asserting rights on behalf of itself. . . the [Supreme] Court has recognized the doctrine of [third-party] standing." *Secretary of Maryland v. Joseph H. Munson Co.*, 497 U.S. 947, 956 (1984). When confronted by a situation where such obstacles are present

4

> the Court considers whether the third party has sufficient injury-in-fact to satisfy the Art. III case-or-controversy requirement, and whether, as a prudential matter, the third party can reasonably be expected properly to frame the issues and present them with the necessary adversarial zeal.

*Id.* (citing *Craig v. Boren*, 429 U.S. 190, 193-194 (1976)). In the specific context of the First Amendment, the Supreme Court "has enunciated other concerns that justify a lessening of prudential limitations on standing." *Munson*, 497 U.S. at 956. It has also relaxed these "rules of standing without regard to the relationship between the litigant and those whose rights he seeks to assert precisely because application of those rules would have an intolerable, inhibitory effect on freedom of speech." *Eisenstadt v. Baird*, 405 U.S. 438, 445 n. 5 (1972).

In the present case, the Respondent seeks to assert the legal rights and interests of third party individuals who posted anonymously on the Respondent's website. Accordingly, the first question before the Court is whether the anonymous commentators face practical obstacles preventing the commentators from asserting their rights on behalf of themselves. In order for these third party commentators to adequately pursue their First Amendment rights before this Court, the commentators would first need to be identified. This loss of anonymity is the very harm that Respondent seeks to prevent. Before offering their pro-Plaintiff or pro-Defendant comments, the individuals posting on the *Pocono Record* website claimed to have personal knowledge of either Ms. Enterline, Dr. Cooks, or the internal workings of the Pocono Medical Center. In many cases, the commentator represented that his or her personal knowledge of the situation was obtained in an employment or other close interpersonal relationship with Ms. Enterline, Dr. Cooks, or the Hospital. Since these anonymous individuals candidly shared their personal opinions about individuals and

5

entities with whom the commentators may need to maintain a friendship or working relationship, and since disclosing the commentators' identities risks damaging these relationships, the Court finds that these commentators face practical obstacles preventing them from personally asserting their rights.

The second question before the Court is whether the third party litigant "has sufficient injury-in-fact to satisfy the Art. III case-or-controversy requirement." *Munson*, 467 U.S. at 956. Here, Respondent, *The Pocono Record*, argues that preventing the *Record* from asserting the First Amendment rights of anonymous commentators will compromise the vitality of the newspaper's online forums, sparking reduced reader interest and a corresponding decline in advertising revenues. In support of this argument, the Respondent cites to the District Court for the District of Columbia's opinion in *In re Verizon Internet Services, Inc.,* 257 F. Supp. 2d 244 (D.D.C. 2003), *rev'd on other grounds by Recording Industry Association of America, Inc. v. Verizon Internet Services, Inc.*, 351 F.3d 1229 (D.C.Cir. 2003). In that case the district court held that Verizon, as an internet service provider, had a vested interest in vigorously protecting its subscribers' First Amendment rights, because a failure to do so could affect Verizon's ability to maintain and broaden its client base. *Id.* at 258. The *Verizon* court further acknowledged that the Supreme court has recognized third-party standing in similar business/client relationships. *Id*. *citing Virginia v. American Booksellers Assoc.*, 484 U.S. 383, 392-93 (1988) (bookstores may raise First Amendment rights on behalf of booksellers); *Munson*, 467 U.S. at 958 (a professional fundraiser may assert First Amendment rights of its client charities); *Dep't of Labor v. Triplett*, 494 U.S. 715, 720 (1990) ("A restriction upon the fees a lawyer may charge that

6

deprives the lawyer's prospective client of a due process right to obtain legal representation falls squarely within this principle."); *Craig v. Boren,* 429 U.S. 190, 194-97 (1976) (beer vendor may assert equal protection claims of males not allowed to purchase beer until they turn twenty-one). The Court believes that the relationship between *The Pocono Record* and readers posting in the Newspaper's online forums is the type of relationship that allows *The Pocono Record* to assert the First Amendment rights of the anonymous commentators.

The third and final question before the Court with respect to determining whether *The Pocono Record* has standing to assert the First Amendment rights of the anonymous commentators is whether the Newspaper "can reasonably be expected properly to frame the issues and present them with the necessary adversarial zeal." *Munson*, 497 U.S. at 956. The Plaintiff in the current case does not contend that *The Pocono Record* lacks the ability or desire to properly frame the issues, and in light of the Newspaper's desire to maintain the trust of its readers and online commentators, the Court believes that *The Pocono Record* will be an adequate advocate to assert the First Amendment rights of the anonymous commentators.

In summary, (1) the anonymous commentators to *The Pocono Record* website face practical obstacles to asserting their own First Amendment rights; (2) the commentators' third-party representative before the Court displays the adequate injury-in-fact to satisfy Article III's case or controversy requirements; and (3) *The Pocono Record* will zealously argue and frame the issues before the Court. For these three reasons, the Court finds that *The Pocono Record* has third-party standing to assert the First Amendment rights of individuals posting to the Newspaper's online forums.

**II.     Is Disclosure of the Information Sought by Plaintiff Proper Under the First Amendment?**

The Supreme Court of the United States has stated that "an author's decision to remain anonymous. . . is an aspect of the freedom of speech protected by the First Amendment." *McIntyre v. Ohio Elections Commission*, 514 U.S. 334, 342 (1995). This is because "the interest in having anonymous works enter the marketplace of ideas unquestionably outweighs any public interest in requiring disclosure as a condition of entry." *Id.* The Supreme Court has also held that there is "no basis for qualifying the level of First Amendment scrutiny that should be applied to...[the Internet] medium." *Reno v. ACLU*, 521 U.S. 844, 870 (1997). Accordingly, the Court agrees that "[i]t is clear that speech over the internet is entitled to First Amendment protection" and that "[t]his protection extends to anonymous internet speech." *Doe v. Cahill*, 884 A.2d 451, 456 (Del. 2005).

The relevant question is whether the right to anonymity is absolute, or if there are circumstances where the right must give way to other more paramount interests. In the present case, these other interests take the form of information facilitating a plaintiff's pursuit of a civil suit. There is no direct authority concerning this question in the Third Circuit, or any other circuit for that matter, and the Supreme Court has spoken on the subject only in the *McIntyre* case. Application of the standard set forth in *Doe v. 2TheMart.com Inc.*, a case from the Western District of Washington that Plaintiff quotes and cites in support of her arguments, allows the Court to resolve the present issue on narrow grounds and does not require the Court to determine the full extent of the First Amendment right to anonymity. 140 F. Supp. 2d 1088 (W.D. Wash. 2001). In the *2TheMart.com Inc.* case, the district court adopted a test to determine when disclosing the identity of

anonymous Internet users was appropriate:

> The Court will consider four factors in determining whether the subpoena should issue. These are whether: (1) the subpoena seeking the information was issued in good faith and not for any improper purpose, (2) the information sought relates to a core claim or defense, (3) the identifying information is directly and materially relevant to that claim or defense, and (4) information sufficient to establish or to disprove that claim or defense is unavailable from any other source.

*2TheMart.com*, 140 F. Supp. 2d at 1095.  The district court further stated that "non-party disclosure is only appropriate in the exceptional case where the compelling need for the discovery sought outweighs the First Amendment rights of the anonymous speaker."  *Id.* Similar balancing approaches weighing anonymous Internet posters' First Amendment right to anonymity against plaintiffs' need to learn that identity have also been adopted by State courts.  *See Immunomedics, Inc. v. Doe*, 342 N.J. Super. 160, 165 (N.J. Super. Ct. App. Div. 2001) (instructing judges to balance First Amendment rights against the strength of a plaintiff's case when deciding whether to disclose the identity of Internet users).

Plaintiff represents that the information sought through her subpoena "will, hopefully, lead to statements or testimony concerning sexual harassment and retaliation in Defendant's hospital." (Pl.'s Br. in Supp., Doc. 10 at 3.)  The Plaintiff further avers that the information that will hopefully result from *The Pocono Record*'s compliance with the subpoena is directly related to the Plaintiff's sexual harassment and retaliation claims and that this information is unavailable from any other source because only *The Pocono Record* has the information required to identify the anonymous posters.  (*Id.*)

Applying the first of the four *2TheMart.com* factors to the current case, the Court does not find that the subpoena was brought in bad faith or for an improper purpose.  The

9

Plaintiff is pursuing claims of sexual harassment and retaliation against the Defendant and is seeking to obtain the identities of anonymous commentators claiming to have personal information of such behavior. Furthermore, the Plaintiff does not request the information concerning all anonymous commentators on Respondent's website, but seeks to learn only the identity of those anonymous commentators claiming personal information with respect to the subject matter of Plaintiff's case.

Turning to the second *2TheMart.com* factor, the Court finds that the information sought relates to a core claim, not a secondary or tangential claim, in the Plaintiff's case. Several of the comments posted to the *Record*'s website state that the poster had personal knowledge specifically relating to relationships Plaintiff had with her co-workers and the Defendant hospital. As such, these statements, and the identity of the person making these statements relates to the core claim–that she was sexually harassed and faced subsequent retaliation–that Plaintiff states in her Complaint.

Considering the third factor articulated in *2TheMart.com*, the Court finds that the information sought by Plaintiff is directly and materially related to the Plaintiff's core claims of sexual harassment and retaliation. The comments posted on *The Pocono Record*'s website include statements from anonymous commentators claiming to have direct knowledge of the relationship between Ms. Enterline and Dr. Cooks, as well as knowledge about the operations and practices of the Pocono Medical Center. Assuming that these commentators accurately portrayed their relationships with the parties involved in Plaintiff's case, their testimony would be highly valuable not only to Plaintiff, but to the Defendant as well.

Turning to the fourth and final *2TheMart.com* factor, the Court does not find that the Plaintiff has demonstrated that the information required to prove her claims of harassment and discrimination are unavailable from other sources. Even though it may be impossible to learn the identity of specific commentators posting to *The Pocono Record* website without Respondent's compliance with the subpoena, the Court is not persuaded that the identity of these anonymous posters is necessary for the Plaintiff to effectively pursue her claims. Plaintiff has requested all documents relating to the identity of eight individuals posting under pseudonyms. In the comments that they posted, many of these individuals identify themselves as employees in the Emergency Room at the Pocono Medical Center, as formerly filing complaints against Dr. Cooks, or otherwise being closely associated with the Plaintiff or Defendant. Accordingly, the Court believes that much of the information the Plaintiff hopes to uncover after learning the identities of commentators on the Newspaper's website is information that will be obtained through normal, anticipated forms of discovery, including depositions of Ms. Enterline's co-workers and other individuals associated with Dr. Cooks and the Pocono Medical Center. While disclosure of the commentators' identities would certainly be helpful to the Plaintiff, the Court does not believe that this is an exceptional case where the compelling need for the discovery sought outweighs the First Amendment rights of the anonymous speaker. For this reason, Plaintiff's motion will be denied.[1]

---

[1] The Court's finding that the disclosure of information sought by Plaintiff is improper under the First Amendment is sufficient for disposition of Plaintiff's current motion. Accordingly, the Court need not evaluate and discuss Plaintiff and Respondent's respective arguments regarding the applicability of the Reporter's Privilege, whether the subpoena imposes an undue burden on Respondent, and whether the subpoena was timely pursuant to Federal Rule of Civil Procedure 26.

**CONCLUSION**

After carefully considering the background information and arguments provided by Plaintiff's and Respondent's respective briefs, the Court finds that the Respondent has standing to assert the First Amendment rights of the anonymous commentators. This third-party standing is appropriate in the present case because the anonymous commentators face practical obstacles preventing them from asserting their own rights, the Respondent satisfies the Article III injury-in-fact requirements, and the Respondent has shown that it will zealously argue and frame the issues before the Court.

The Court also finds that disclosure of the anonymous commentators' identities is not appropriate under the rights guaranteed by the First Amendment. Even though the Court believes that the Plaintiff's subpoena was issued in good faith and seeks information directly and materially relevant to the core claims in Plaintiff's Complaint, the Court also finds that information sufficient to establish Plaintiff's claims of harassment and retaliation is available from other sources. Since Plaintiff is able to obtain the information needed to pursue her claims through means that do not encroach on the First Amendment rights of the anonymous commentators, the Court will deny Plaintiff's motion.

An appropriate order follows.

 December 11, 2008                                   /s/ A. Richard Caputo
Date                                                           A. Richard Caputo
                                                                   United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

BRENDA ENTERLINE,

    Plaintiff,

        v.

POCONO MEDICAL CENTER,

    Defendant.

CIVIL ACTION No. 3:08-cv-1934

(JUDGE CAPUTO)

**ORDER**

Now, this __11th__ day of December, 2008, it is **HEREBY ORDERED** that Plaintiff's Motion to Compel and for Sanctions (Doc. 9) is **DENIED**.

                                      /s/ A. Richard Caputo
                                      A. Richard Caputo
                                      United States District Judge